United States District Court
District of Massachusetts

| | |
|---|---|
| Islam Faisal Muhammad Ibrahim Abdelrasoul, )<br><br>Plaintiff, )<br><br>v. )<br><br>Trustees of Boston University )<br><br>Defendant. ) | Civil Action No.<br>24-10988-NMG |

MEMORANDUM & ORDER

GORTON, J.

This case arises from a housing dispute between plaintiff Islam Faisal M.I. Abdelrasoul ("Abdelrasoul" or "plaintiff")and Boston University Housing Services, a subsidiary of defendant Trustees of Boston University ("BU" or "defendant"). In March, 2024, BU refused to offer plaintiff a housing accommodation for his alleged disability and declined to renew plaintiff's housing agreement for the 2024-2025 academic year.

Plaintiff, originally acting pro se, filed a 13-count complaint alleging, among other claims, that defendant discriminated against him on the basis of his disability and retaliated against him after he threatened to report BU to the City of Boston. In June, 2024, this time represented by

- 1 -

counsel, plaintiff filed an amended complaint, adding seven claims.

Defendant moves to dismiss all counts and, for the following reasons, the motion will be allowed, in part, and denied, in part.

## I.    Background

### A. Facts

According to the complaint, plaintiff is a student in the Ph.D. program at BU who resides in graduate student housing.  In April, 2023, Abdelrasoul submitted to BU a housing disability accommodation letter in which he requested to move from a studio apartment to a one-bedroom apartment for the following academic year.  He attached a letter from a clinical psychologist that stated that his mental health would benefit from the move.  BU allegedly denied the request and plaintiff remained in the same studio unit for the 2023-24 academic year.

In February, 2024, BU Housing Services informed plaintiff that it had received a notice of inspection by the City of Boston and requested him to complete a consent form which included a right of entry without the presence of the student. In its email notice, BU explained that a resident's failure to return the completed form could result in a violation of the residence license agreement.

On March 5, 2024, plaintiff responded to BU Housing Services by questioning the wording of the consent form as a "threat[]" and asserting that BU had been engaging in "a lot of unfair practices towards the students since they took over graduate housing".  He claimed that the form violated the policies of the City of Boston because it required tenants to waive their right to be in their residence during the inspection.  Although BU responded that the inspection was routine and that Abdelrasoul had the right to be present during the inspection, plaintiff sur-replied that he would not be "coerce[d]" into signing the form and threatened to report BU to the City.

Six days later on March 11, 2024, plaintiff contacted BU Graduate Housing to complain that he could not access his lease renewal agreement online.  BU Graduate Housing responded that he could not renew his lease until he complied with his rental agreement by submitting a completed inspection consent form. The relevant portion of Section 32 of that agreement provides:

> The City of Boston Inspectional Services and University have the right to enter for routine inspections of the Premises.  Licensee cannot refuse entry for Inspectional Services to conduct these routine inspections during stipulated dates and times which will be provided with reasonable notice.

- 3 -

In the continuing email thread, BU also confirmed that it could not accommodate plaintiff's April, 2023, disability accommodation request, as follows:

> I must also highlight your previous request to relocate to a different unit earlier this year, which our office was not able to honor. Our office will continue to not be able to honor your request to move to a different unit between agreement terms. Considering the factors mentioned above, unfortunately, we are unable to offer you the option to renew your agreement for the 2024-2025 term session.

Although plaintiff attempted to submit a signed inspection consent form on March 12, BU persisted in declining to renew his residence agreement. Plaintiff followed up with the Director of BU Housing but to no avail.

**B. Procedural History**

In the original complaint filed in April, 2024, plaintiff alleged, inter alia, that defendant discriminated against him on the basis of his disability, retaliated against him after he threatened to report BU to the City and intentionally inflicted upon him emotional distress. He simultaneously filed an emergency motion for an ex parte temporary restraining order ("TRO") and preliminary injunction. The Court denied both, finding that plaintiff had demonstrated neither a likelihood of success on the merits nor irreparable harm.

- 4 -

In May, 2024, plaintiff filed a notice of interlocutory appeal to the First Circuit Court of Appeals ("First Circuit") challenging the denial of the preliminary injunction.  In June, 2024, plaintiff sought, and the First Circuit granted, a stay of his appeal so that he could file a motion for reconsideration in this Court.  In July, 2024, plaintiff filed a motion to vacate the ruling of this Court and to defer to the Massachusetts Housing Court on the issues of the TRO and preliminary injunction.  That pleading was treated as a motion for reconsideration and was denied.  The appeal, nevertheless, apparently remains pending before the First Circuit.

In July, 2024, with the aid of counsel, plaintiff filed a 20-count amended complaint, alleging, _inter alia_, violations of the Fair Housing Act ("FHA"), negligence and breach of contract. Plaintiff later voluntarily dismissed without prejudice Counts 8 and 9, both of which he had filed on behalf of his brother.

In response, defendant filed a motion to dismiss all counts.  Plaintiff does not contest dismissal of Counts 1 through 10, and 15 through 20.  Therefore, this Court will dismiss those counts and consider here only Counts 11 through 14.

## II.  Motion to Dismiss

### A. Legal Standard

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the subject pleading must state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the "court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678).  The reviewing court "may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12.

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).  A court also may not disregard properly pled factual allegations even if "actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12 (quoting Twombly, 550 U.S. at 556).  Rather, the necessary "inquiry focuses on the

reasonableness of the inference of liability that the plaintiff is asking the court to draw." Id. at 13.  The assessment is holistic:

> the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.

Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernandez, 640 F.3d at 14).

### B. Application

### 1.   Counts 11, 12 and 13: Discrimination

Counts 11 through 13 allege housing discrimination under the FHA, 42 U.S.C. §3604(f), and its state law analog, M.G.L. c.151B.  Section 3604(f)(1)(A) prohibits

> discrimination in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter.

Subsection(f)(2)(A) similarly bars discrimination "in the terms conditions, or privileges of sale or rental of a dwelling" due to a handicap of the tenant.

Section (f)(3)(B) expands the definition of discrimination to include

> refus[ing] to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling.

Plaintiff claims defendant violated each of these three subsections (and their corresponding state law equivalents under M.G.L. c.151B) by first denying his request for a "reasonable accommodation" (i.e., moving him from a studio to a one-bedroom apartment) and then preventing him from renewing his housing contract.

To establish a claim of discrimination under any one of the subsections of §3604, plaintiff must first demonstrate that he has a "handicap" as defined by the statute.  Both the FHA and M.G.L. c.151B define the term "handicap" as "a physical or mental impairment which substantially limits one or more of [a] person's major life activities . . . ." 42 U.S.C. §3602(h); M.G.L. c. 151B, § 1(17).

Defendant contends that the complaint fails to allege facts sufficient to prove the first element of a discrimination claim because it describes neither the nature of plaintiff's "mental impairment" nor how said handicap "substantially limits one or more of [his] major life activities." 42 U.S.C. § 3602(h); M.G.L. c. 151B, § 1(17).

Plaintiff insists that the letter from his psychologist demonstrates that he has a qualifying handicap but the vague claims made by the therapist are insufficient to carry his burden.  The letter, in relevant part, states:

> [Plaintiff's] condition meets the definition of
> disability under the Americans with Disabilities
> Act, the Fair Housing Act, and the Rehabilitation
> Act of 1973.  Living in a studio apartment with a
> roommate has been detrimental to his mental
> health condition and academic functioning.

At no point does the psychologist (or the plaintiff in his complaint) "plead the disability with specificity" with regard to either the nature of Abdelrasoul's mental health condition or the resulting limitations he faces.[1] Garcia v. Chapman, 2:24-cv-00109-LEW, 2024 WL 1694092, at *2 (D. Me. Apr. 19, 2024)(citing Miles v. Hous. Auth. Of Texarkana, 668 Fed. Appx. 450, 452 (5th Cir. 2016)).  The bare-bones legal conclusion offered in the letter constitutes the kind of

> formulaic recitation of the elements of a cause
> of action [that does not] raise a right of relief
> above a speculative level.

Twombly, 550 U.S. at 555.  A factually barren statement that plaintiff has a qualifying disability is not endowed with special weight simply because it is a professional who proclaims it.  See Cosme-Pérez v. Municipality of Juana Diaz, 110 F. Supp. 3d 357, 365 (D.P.R. 2015) (concluding that allegations of an impairment "supported only with a medical diagnosis or conclusory assertions of disability by a physician are

---

[1] The complaint briefly mentions a prior diagnosis of anxiety but does not indicate whether that is the "condition" to which the letter refers.

insufficient to show disability" in the context of a claim under the Americans with Disabilities Act).

Even if plaintiff had demonstrated a qualifying handicap, Count 11 is deficient because he does not allege facts to support his claim that his request for accommodation was

> both reasonable and necessary to allow equal
> opportunity for use and enjoyment of the
> housing . . . .

Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 67 (1st Cir. 2010). This Court previously warned plaintiff, in denying his motion for a preliminary injunction, that the original complaint failed to explain why a one-room apartment was necessary to ensure he had equal opportunity to use and enjoy his housing. The amended complaint does not remedy that defect.

### 2. Count 14: Retaliation

In Count 14 of the amended complaint, plaintiff alleges that BU took adverse action against him by prohibiting him from renewing his housing agreement in retaliation for submitting his accommodation requests.

A retaliation claim under the FHA requires plaintiff to allege that: (1) he engaged in protected activity, (2) defendant committed an adverse act against him, and (3) there is a causal link between the protected activity and the adverse action.

Dixon v. Hallmark Cos., 627 F.3d 849, 858 (11th Cir. 2010); Kris
v. Dusseault Fam. Revocable Tr., 594 F. Supp. 3d 333, 341
(D.N.H. 2022).

The facts alleged in the complaint easily satisfy the first
and second elements of a retaliation claim. Plaintiff's "self-
advocacy" in his emails to BU Housing requesting an
accommodation is considered a protected activity under the
retaliation provision of the FHA. Valle-Arce v. P.R. Ports
Auth., 651, F.3d 190, 198 (1st Cir. 2011). An adverse act under
the FHA is defined as "coercion, intimidation, threats, or
interference." 42 U.S.C. § 3617. Preventing plaintiff from
accessing the housing portal constituted an act of interference
by BU.

Defendant argues that plaintiff fails at the third step
because he cannot show that his accommodation requests were the
cause of BU's declination. Although it is a close call, this
Court disagrees. The complaint alleges that plaintiff signed
the inspection consent form prior to the renewal deadline for
his housing contract. He then attempted to renew his contract
(also before the deadline) but found himself blocked from the
portal. When he made an inquiry to BU Housing Services, the
office cited two reasons for declining his renewal request: (1)
plaintiff's failure to sign the inspection consent form; and (2)

the inability of Housing Services to accommodate plaintiff's requests for a one-bedroom apartment.

Defendant insists that the claim cannot stand because the accommodation requests were the "but-for" cause of the adverse act but that is unpersuasive. As defendant admits, the First Circuit has yet to decide whether the protected activity must be the but-for cause of the adverse action or if it can be one of several motivating factors. Even if this Court were to adopt a but-for causation standard, the complaint alleges facts sufficient to raise a plausible right to relief.

At the motion to dismiss stage, this Court

> construes the material facts alleged in the complaint in the light most favorable to the plaintiff, with dismissal granted only if plaintiff has presented no set of facts upon which relief can be granted.

CP Holdings, Inc. v. Goldberg-Zoino & Associates, Inc., 769 F. Supp. 432, 433 n.1 (D.N.H. 1991) (citing Chasan v. Village Dist. Of Eastman, 572 F. Supp. 578 (D.N.H. 1983), aff'd without opinion, 745 F.2d 43 (1st Cir. 1984)). Construing the facts in the light most favorable to plaintiff, BU Housing Services admitted that the accommodation requests motivated its decision and offered up the missing consent form as an excuse to obscure its retaliatory intent.

Although this Court doubted the merits of plaintiff's retaliation claim when it denied his motion for a preliminary injunction, that earlier conclusion does not close the door on plaintiff's claim at this stage in the litigation.  Here, the Court is concerned

> [not with] whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Plaintiff is so entitled.

### ORDER

For the foregoing reasons, defendant's motion to dismiss (Docket No. 68) is with respect to Counts 1-13 and 15-20, **ALLOWED**; but with respect to count 14, **DENIED**. **So ordered.**

_____
Nathaniel M. Gorton
United States District Judge

Dated: December   , 2024

- 13 -

United States District Court
District of Massachusetts

```
                              )
Islam Faisal Muhammad Ibrahim )
Abdelrasoul,                   )
                              )
          Plaintiff,          )
                              )    Civil Action No.
          v.                  )    24-10988-NMG
                              )
Trustees of Boston University )
                              )
          Defendant.          )
                              )
```

MEMORANDUM & ORDER

GORTON, J.

This case arises from a housing dispute between plaintiff Islam Faisal M.I. Abdelrasoul ("Abdelrasoul" or "plaintiff")and Boston University Housing Services, a subsidiary of defendant Trustees of Boston University ("BU" or "defendant"). In March, 2024, BU refused to offer plaintiff a housing accommodation for his alleged disability and declined to renew plaintiff's housing agreement for the 2024-2025 academic year.

Plaintiff, originally acting pro se, filed a 13-count complaint alleging, among other claims, that defendant discriminated against him on the basis of his disability and retaliated against him after he threatened to report BU to the City of Boston. In June, 2024, this time represented by

counsel, plaintiff filed an amended complaint, adding seven claims.

Defendant moves to dismiss all counts and, for the following reasons, the motion will be allowed, in part, and denied, in part.

## I.  **Background**

### A. Facts

According to the complaint, plaintiff is a student in the Ph.D. program at BU who resides in graduate student housing.  In April, 2023, Abdelrasoul submitted to BU a housing disability accommodation letter in which he requested to move from a studio apartment to a one-bedroom apartment for the following academic year.  He attached a letter from a clinical psychologist that stated that his mental health would benefit from the move.  BU allegedly denied the request and plaintiff remained in the same studio unit for the 2023-24 academic year.

In February, 2024, BU Housing Services informed plaintiff that it had received a notice of inspection by the City of Boston and requested him to complete a consent form which included a right of entry without the presence of the student. In its email notice, BU explained that a resident's failure to return the completed form could result in a violation of the residence license agreement.

On March 5, 2024, plaintiff responded to BU Housing Services by questioning the wording of the consent form as a "threat[]" and asserting that BU had been engaging in "a lot of unfair practices towards the students since they took over graduate housing". He claimed that the form violated the policies of the City of Boston because it required tenants to waive their right to be in their residence during the inspection. Although BU responded that the inspection was routine and that Abdelrasoul had the right to be present during the inspection, plaintiff sur-replied that he would not be "coerce[d]" into signing the form and threatened to report BU to the City.

Six days later on March 11, 2024, plaintiff contacted BU Graduate Housing to complain that he could not access his lease renewal agreement online. BU Graduate Housing responded that he could not renew his lease until he complied with his rental agreement by submitting a completed inspection consent form. The relevant portion of Section 32 of that agreement provides:

> The City of Boston Inspectional Services and University have the right to enter for routine inspections of the Premises. Licensee cannot refuse entry for Inspectional Services to conduct these routine inspections during stipulated dates and times which will be provided with reasonable notice.

In the continuing email thread, BU also confirmed that it could not accommodate plaintiff's April, 2023, disability accommodation request, as follows:

> I must also highlight your previous request to relocate to a different unit earlier this year, which our office was not able to honor. Our office will continue to not be able to honor your request to move to a different unit between agreement terms. Considering the factors mentioned above, unfortunately, we are unable to offer you the option to renew your agreement for the 2024-2025 term session.

Although plaintiff attempted to submit a signed inspection consent form on March 12, BU persisted in declining to renew his residence agreement. Plaintiff followed up with the Director of BU Housing but to no avail.

**B. Procedural History**

In the original complaint filed in April, 2024, plaintiff alleged, _inter alia_, that defendant discriminated against him on the basis of his disability, retaliated against him after he threatened to report BU to the City and intentionally inflicted upon him emotional distress. He simultaneously filed an emergency motion for an _ex parte_ temporary restraining order ("TRO") and preliminary injunction. The Court denied both, finding that plaintiff had demonstrated neither a likelihood of success on the merits nor irreparable harm.

- 4 -

In May, 2024, plaintiff filed a notice of interlocutory appeal to the First Circuit Court of Appeals ("First Circuit") challenging the denial of the preliminary injunction. In June, 2024, plaintiff sought, and the First Circuit granted, a stay of his appeal so that he could file a motion for reconsideration in this Court. In July, 2024, plaintiff filed a motion to vacate the ruling of this Court and to defer to the Massachusetts Housing Court on the issues of the TRO and preliminary injunction. That pleading was treated as a motion for reconsideration and was denied. The appeal, nevertheless, apparently remains pending before the First Circuit.

In July, 2024, with the aid of counsel, plaintiff filed a 20-count amended complaint, alleging, inter alia, violations of the Fair Housing Act ("FHA"), negligence and breach of contract. Plaintiff later voluntarily dismissed without prejudice Counts 8 and 9, both of which he had filed on behalf of his brother.

In response, defendant filed a motion to dismiss all counts. Plaintiff does not contest dismissal of Counts 1 through 10, and 15 through 20. Therefore, this Court will dismiss those counts and consider here only Counts 11 through 14.

## II. **Motion to Dismiss**

### A. Legal Standard

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the subject pleading must state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the "court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). The reviewing court "may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12.

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). A court also may not disregard properly pled factual allegations even if "actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12 (quoting Twombly, 550 U.S. at 556). Rather, the necessary "inquiry focuses on the

reasonableness of the inference of liability that the plaintiff is asking the court to draw." Id. at 13.  The assessment is holistic:

> the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.

Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernandez, 640 F.3d at 14).

**B. Application**

**1.    Counts 11, 12 and 13: Discrimination**

Counts 11 through 13 allege housing discrimination under the FHA, 42 U.S.C. §3604(f), and its state law analog, M.G.L. c.151B.  Section 3604(f)(1)(A) prohibits

> discrimination in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter.

Subsection(f)(2)(A) similarly bars discrimination "in the terms conditions, or privileges of sale or rental of a dwelling" due to a handicap of the tenant.

Section (f)(3)(B) expands the definition of discrimination to include

> refus[ing] to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling.

Plaintiff claims defendant violated each of these three subsections (and their corresponding state law equivalents under M.G.L. c.151B) by first denying his request for a "reasonable accommodation" (i.e., moving him from a studio to a one-bedroom apartment) and then preventing him from renewing his housing contract.

To establish a claim of discrimination under any one of the subsections of §3604, plaintiff must first demonstrate that he has a "handicap" as defined by the statute.  Both the FHA and M.G.L. c.151B define the term "handicap" as "a physical or mental impairment which substantially limits one or more of [a] person's major life activities . . . ." 42 U.S.C. §3602(h); M.G.L. c. 151B, § 1(17).

Defendant contends that the complaint fails to allege facts sufficient to prove the first element of a discrimination claim because it describes neither the nature of plaintiff's "mental impairment" nor how said handicap "substantially limits one or more of [his] major life activities." 42 U.S.C. § 3602(h); M.G.L. c. 151B, § 1(17).

Plaintiff insists that the letter from his psychologist demonstrates that he has a qualifying handicap but the vague claims made by the therapist are insufficient to carry his burden.  The letter, in relevant part, states:

> [Plaintiff's] condition meets the definition of
> disability under the Americans with Disabilities
> Act, the Fair Housing Act, and the Rehabilitation
> Act of 1973.  Living in a studio apartment with a
> roommate has been detrimental to his mental
> health condition and academic functioning.

At no point does the psychologist (or the plaintiff in his complaint) "plead the disability with specificity" with regard to either the nature of Abdelrasoul's mental health condition or the resulting limitations he faces.[1] Garcia v. Chapman, 2:24-cv-00109-LEW, 2024 WL 1694092, at *2 (D. Me. Apr. 19, 2024)(citing Miles v. Hous. Auth. Of Texarkana, 668 Fed. Appx. 450, 452 (5th Cir. 2016)).  The bare-bones legal conclusion offered in the letter constitutes the kind of

> formulaic recitation of the elements of a cause
> of action [that does not] raise a right of relief
> above a speculative level.

Twombly, 550 U.S. at 555.  A factually barren statement that plaintiff has a qualifying disability is not endowed with special weight simply because it is a professional who proclaims it.  See Cosme-Pérez v. Municipality of Juana Diaz, 110 F. Supp. 3d 357, 365 (D.P.R. 2015) (concluding that allegations of an impairment "supported only with a medical diagnosis or conclusory assertions of disability by a physician are

---

[1] The complaint briefly mentions a prior diagnosis of anxiety but does not indicate whether that is the "condition" to which the letter refers.

insufficient to show disability" in the context of a claim under
the Americans with Disabilities Act).

Even if plaintiff had demonstrated a qualifying handicap,
Count 11 is deficient because he does not allege facts to
support his claim that his request for accommodation was

> both reasonable and necessary to allow equal
> opportunity for use and enjoyment of the
> housing . . . .

Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban
Dev., 620 F.3d 62, 67 (1st Cir. 2010). This Court previously
warned plaintiff, in denying his motion for a preliminary
injunction, that the original complaint failed to explain why a
one-room apartment was necessary to ensure he had equal
opportunity to use and enjoy his housing. The amended complaint
does not remedy that defect.

### 2.    Count 14: Retaliation

In Count 14 of the amended complaint, plaintiff alleges
that BU took adverse action against him by prohibiting him from
renewing his housing agreement in retaliation for submitting his
accommodation requests.

A retaliation claim under the FHA requires plaintiff to
allege that: (1) he engaged in protected activity, (2) defendant
committed an adverse act against him, and (3) there is a causal
link between the protected activity and the adverse action.

- 10 -

<u>Dixon</u> v. <u>Hallmark Cos.</u>, 627 F.3d 849, 858 (11th Cir. 2010); <u>Kris</u> v. <u>Dusseault Fam. Revocable Tr.</u>, 594 F. Supp. 3d 333, 341 (D.N.H. 2022).

The facts alleged in the complaint easily satisfy the first and second elements of a retaliation claim. Plaintiff's "self-advocacy" in his emails to BU Housing requesting an accommodation is considered a protected activity under the retaliation provision of the FHA. <u>Valle-Arce</u> v. <u>P.R. Ports Auth.</u>, 651, F.3d 190, 198 (1st Cir. 2011). An adverse act under the FHA is defined as "coercion, intimidation, threats, or interference." 42 U.S.C. § 3617. Preventing plaintiff from accessing the housing portal constituted an act of interference by BU.

Defendant argues that plaintiff fails at the third step because he cannot show that his accommodation requests were the cause of BU's declination. Although it is a close call, this Court disagrees. The complaint alleges that plaintiff signed the inspection consent form prior to the renewal deadline for his housing contract. He then attempted to renew his contract (also before the deadline) but found himself blocked from the portal. When he made an inquiry to BU Housing Services, the office cited two reasons for declining his renewal request: (1) plaintiff's failure to sign the inspection consent form; and (2)

- 11 -

the inability of Housing Services to accommodate plaintiff's requests for a one-bedroom apartment.

Defendant insists that the claim cannot stand because the accommodation requests were the "but-for" cause of the adverse act but that is unpersuasive. As defendant admits, the First Circuit has yet to decide whether the protected activity must be the but-for cause of the adverse action or if it can be one of several motivating factors.  Even if this Court were to adopt a but-for causation standard, the complaint alleges facts sufficient to raise a plausible right to relief.

At the motion to dismiss stage, this Court

> construes the material facts alleged in the
> complaint in the light most favorable to the
> plaintiff, with dismissal granted only if
> plaintiff has presented no set of facts upon
> which relief can be granted.

CP Holdings, Inc. v. Goldberg-Zoino & Associates, Inc., 769 F. Supp. 432, 433 n.1 (D.N.H. 1991) (citing Chasan v. Village Dist. Of Eastman, 572 F. Supp. 578 (D.N.H. 1983), aff'd without opinion, 745 F.2d 43 (1st Cir. 1984)).  Construing the facts in the light most favorable to plaintiff, BU Housing Services admitted that the accommodation requests motivated its decision and offered up the missing consent form as an excuse to obscure its retaliatory intent.

Although this Court doubted the merits of plaintiff's retaliation claim when it denied his motion for a preliminary injunction, that earlier conclusion does not close the door on plaintiff's claim at this stage in the litigation.  Here, the Court is concerned

> [not with] whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Plaintiff is so entitled.

### ORDER

For the foregoing reasons, defendant's motion to dismiss (Docket No. 68) is with respect to Counts 1-13 and 15-20, **ALLOWED**; but with respect to count 14, **DENIED**. **So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated: December 18, 2024