United States District Court
District of Massachusetts

```
                                  )
Islam Abdelrasoul,                )
                                  )
          Plaintiff,              )
                                  )
     v.                           )      Civil Action No.
                                  )      24-10988-NMG
Trustees of Boston University,    )
                                  )
          Defendant.              )
                                  )
                                  )
```

MEMORANDUM & ORDER

GORTON, J.

This case concerns various housing-related claims brought by pro se plaintiff Islam Abdelrasoul ("Abdelrasoul" or "plaintiff"). Pending before the Court is the motion of defendant Trustees of Boston University ("BU" or "defendant") to dismiss (Docket No. 125). For the following reasons that motion will be allowed, in part, and denied, in part.

I.  **Background**

The background of this case is well documented in the Order of the Court allowing, in part, and denying, in part, defendant's prior motion to dismiss (Docket No. 86). That background is summarized and supplemented, as required, below.

**A. Facts**

According to the second amended complaint ("SAC"), plaintiff is a student in the Ph.D. program at BU who resided in

-1-

a graduate student housing studio apartment with his brother. In June, 2022, plaintiff signed a Graduate Residence License Agreement ("GRLA") that governed his tenancy.  That agreement granted BU "sole discretion" with respect to housing eligibility and allowed it to enter the premises "at any time, if possible with notice" for routine maintenance, health and safety, City inspections and to show the unit to successor occupants.

In April, 2023, Abdelrasoul submitted to BU a housing disability accommodation letter in which he requested that he and his brother be transferred from a studio apartment to a one-bedroom apartment for the following academic year.  He attached a letter from a clinical psychologist stating that living with a roommate in a studio apartment was detrimental to his mental health and that he would benefit from a one-bedroom apartment. BU allegedly denied that request and plaintiff remained in the same studio unit for the 2023-24 academic year.

In February, 2024, BU Housing Services informed plaintiff that it had received a notice of inspection by the City of Boston and requested that he complete a consent form which included a right of entry without the presence of the student. In its email notice, BU explained that failure to return the completed form could constitute a violation of the GRLA.

In March, 2024, plaintiff responded to BU Housing Services by questioning the wording of the consent form as a threat and

accusing BU of unfair practices.  He claimed that the form violated policies of the City of Boston ("the City") because it required tenants to waive their rights to be in their residence during the inspection.  Although BU responded that the inspection was routine and that Abdelrasoul had the right to be present during the inspection, plaintiff replied that he would not be "coerce[d]" into signing the form and threatened to report BU to the City.

Six days later, plaintiff contacted BU Graduate Housing to complain that he could not access his lease renewal agreement online.  BU Graduate Housing responded that he could not renew his lease until he complied with the GRLA by submitting a completed inspection consent form.  The relevant portion of Section 32 of the GRLA provides:

> The City of Boston Inspectional Services and University have the right to enter for routine inspections of the Premises.  Licensee cannot refuse entry for Inspectional Services to conduct these routine inspections during stipulated dates and times which will be provided with reasonable notice.

In the continuing email thread, BU also confirmed that it could not accommodate plaintiff's April, 2023, disability accommodation request, as follows:

> I must also highlight your previous request to relocate to a different unit earlier this year, which our office was not able to honor. Our office will continue to not be able to honor your request to move to a different unit

-3-

> between agreement terms. Considering the factors mentioned above, unfortunately, we are unable to offer you the option to renew your agreement for the 2024-2025 term session.

Although plaintiff attempted to submit a signed inspection consent form on March 12, 2024, BU persisted in declining to renew his residence agreement.

In May, 2024, plaintiff sent BU another letter from his psychologist which recommended that he be allowed to remain living with his brother but in a one-bedroom apartment as initially requested. The renewed request was not granted.

The GRLA lapsed on July 15, 2024. Plaintiff alleges that he tendered, and defendant accepted, the July, 2024 rent. Platiniff alleges that, thereafter, defendant's agents repeatedly entered his apartment without notice or announcement, often interrupting him while he was partially clothed. He also alleges that defendant disabled his key card access to the residence and changed the lock on his mailbox. He vacated the residence in early August, 2024.

### B. Procedural History

Plaintiff filed the original complaint (Docket No. 1) in April, 2024, and an amended complaint (Docket No. 55) in June, 2024. He moved for a temporary restraining order and preliminary injunction. The Court denied both motions (Docket Nos. 7 and 42). BU moved to dismiss the amended complaint,

-4-

which the Court allowed, in part, and denied, in part (Docket No. 86). The Court permitted plaintiff to file the SAC (with respect to some, but not all, claims) in November, 2025, and after it was filed defendant promptly moved to dismiss.

## II. <u>Motion to Dismiss</u>

### A. Legal Standard

Defendant has moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff must state a claim for relief that is actionable as a matter of law and plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). When rendering such a determination, a court may consider certain documents central to a plaintiff's claim or documents that were sufficiently referred to in the complaint. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

### B. Application

#### i. Count 1: Property Law Claims

In Count One, plaintiff alleges ten separate legal theories stemming from defendant's actions after his lease was terminated on July 15, 2024. The Court notes that plaintiff's claims

-5-

premised upon "Violation of Housing or Tenant Protection Laws" and "Obstructive Access to Mail" fail to identify civil causes of action for which plaintiff seeks relief.  Despite that shortcoming, the Court will grant leeway to the pro se plaintiff and evaluate each of the remaining articulated theories of liability.

As an initial matter, the parties dispute plaintiff's status as a tenant after July 15, 2024.  BU argues that 1) under the GRLA, Abdelrasoul was a licensee and was not entitled to statutory tenant protections and 2) the expiration of the GRLA extinguished any legal interest he may have had in the unit. Abdelrasoul responds that he was a tenant, not a licensee, and that his payment of rent in July, 2024, created a tenancy at will.

While the question of student tenancy is a close one, the Court concludes that plaintiff was a tenant during the time in question.  A landlord-tenant relationship is one in which one party pays rent in return for exclusive possession of certain premises. See Miller v. Berk, 328 Mass. 393, 397 (1952); Roberts v. Lynn Ice Co., 187 Mass. 402, 406-07 (1905).  In this case, plaintiff paid rent on a monthly basis and was granted exclusive possession (along with his brother) of the studio apartment. These facts are sufficient to establish a landlord-tenant relationship between the parties.  Moreover, the complaint

-6-

(together with its incorporated documents) alleges that plaintiff paid rent in July, 2024, after the expiration of his lease, thereby creating a tenancy at will. See Mastrullo v. Ryan, 328 Mass. 621, 624 (1952).

### 1. Constructive Eviction and Breach of Quiet Enjoyment

Abdelrasoul contends that BU's disabling of his keycard access, changing of his mailbox key, insults and unauthorized entry constitute illegal constructive eviction.  In Massachusetts, a tenant who is evicted from his residence without a court order is entitled to relief under M.G.L. ch. 186 §15(f).  Constructive eviction occurs when a landlord's permanent acts have the effect of depriving the tenant of the enjoyment of the premises causing the tenant to relinquish possession voluntarily. Wesson v. Leone Enters., Inc., 437 Mass. 708, 713, 774 N.E.2d 611, 616 (2002).

Similarly, M.G.L. ch. 186 §16 protects a tenant's right to quiet enjoyment of his residential premises.  The right of quiet enjoyment protects a tenant from a landlord seriously interfering with the tenancy by acting to impair the character and value of the leasehold. Goreham v. Martins, 147 N.E.3d 478, 490 (Mass. 2020).

The Court concludes that the alleged facts state claims for relief under both theories.  The SAC alleges that BU

-7-

significantly impeded Abdelrasoul's access to the premises and his mailbox, causing him to vacate the property. If true, those facts are sufficient to allege a breach of the right of quiet enjoyment and constructive eviction. The motion to dismiss will therefore be denied as to the illegal constructive eviction and breach of quiet unenjoyment claims in Count 1.

### 2. Breach of Covenant of Good Faith and Fair Dealing

Every contract implies the covenant of good faith and fair dealing. T.W. Nickerson, Inc. v. Fleet Nat'l. Bank, 924 N.E.2d 696, 704 (Mass. 2010). A violation of that covenant, however, requires a showing of economic loss. Grant v. Target Corp., 126 F. Supp. 3d 183, 190 (D. Mass. 2015). Plaintiff has failed to make such a showing and the motion to dismiss as to the good faith and fair dealing claim of Count 1 will be allowed.

### 3. Nuisance

A private nuisance claim may be brought when a property owner creates a condition or activity on their property that substantially and unreasonably interferes with the use and enjoyment of the property of another. Doe v. New Bedford Hous. Auth., 630 N.E.2d 248, 257 (Mass. 1994). Because defendant owns the only property at issue in this case, plaintiff cannot bring a nuisance claim against it. The motion to dismiss will therefore be allowed as to the nuisance claim in Count 1.

### 4. Trespass

A trespass claim in Massachusetts requires a plaintiff to show 1) a right to possession and 2) an intentional and illegal entry by the defendant. Fed. Ins. Co. v. Boston Water and Sewer Commn., 583 F. Supp. 2d 225, 229 (D. Mass. 2008). Plaintiff's complaint alleges that "entry was permitted by plaintiff to defendant" for all entries up to and including those underlying Count 1. The motion to dismiss will therefore be allowed as to the trespass claim in Count 1.

### 5. Invasion of Privacy

The invasion of privacy component of Count 1 is duplicative of Count 8 and will therefore be dismissed. Coonan v. Ethicon, Inc., No. CV 4:21-10310-TSH, 2021 WL 5111867, at *2 (D. Mass. Nov. 3, 2021).

### 6. Conversion of Mail

To prevail on a claim of conversion, a plaintiff must show 1) a right to immediate possession of personal property that 2) defendant converted to its own use by depriving the rightful owner of it and 3) that the plaintiff was injured as a result. Unum Grp. v. Loftus, 220 F. Supp. 3d 143, 148 (D. Mass. 2016). Here, plaintiff alleges that defendant changed the lock on his mailbox, although he admits to having eventually gained access to his mail. He therefore does not allege injury and the motion

to dismiss as to the conversion claims in Count 1 will be allowed.

### ii. Counts 2, 3.1 and 3.2: Discrimination

Abdelrasoul alleges several discrimination claims under the Fair Housing Act ("FHA").  The FHA makes it unlawful for a landlord to discriminate against an individual on the basis of a disability. 42 U.S.C. §3604(f)(2).  Plaintiff has a qualified disability under the FHA if he shows a physical or mental impairment which substantially limits one or more major life activities. 42 U.S.C. §3602(h).

The Court allowed BU's earlier motion to dismiss with respect to the FHA claims (Docket No. 86) because plaintiff failed to plead facts sufficient to establish a qualifying disability.  Plaintiff has since amended his complaint with the necessary allegations.  Because defendant does not suggest otherwise in its opposition, the Court acknowledges that plaintiff has pled a disability under the FHA for the purposes of defendant's motion.

### 1. Count 2: Failure to Provide Reasonable Accommodations

Count 2 alleges that BU denied Abdelrasoul reasonable accommodation for his disability.  The FHA (and state-law analogue) requires landlords to make reasonable accommodations. 42 U.S.C. §3604(f)(3)(B); M.G.L. c. 151B, § 4(7A)(2).  To state

-10-

claim for discrimination based upon a failure to make such accommodation, plaintiff must establish that 1) he is disabled under the FHA, 2) defendant knew or should have reasonably known about the disability, 3) plaintiff requested a reasonable and necessary accommodation to allow him an equal opportunity to use and enjoy the dwelling and 4) defendant refused to make that accommodation. Summers v. City of Fitchburg, 940 F.3d 133, 139 (1st Cir. 2019).

Here, the Court concludes that plaintiff has failed to allege that his requested accommodation was necessary for his enjoyment of the dwelling. When he made his original request for accommodation in April, 2023, Abdelrasoul's clinician indicated only that living in a studio apartment with a roommate was detrimental to his mental health and that he would benefit from a one-bedroom apartment. While that may support the contention that a private room accommodation was reasonable and necessary, it does not indicate any necessity that plaintiff remain living with his brother.[1]

In any event, BU notified Abdelrasoul that the available accommodation was either 1) a single occupancy unit, which he and his brother were already occupying, or 2) a private room in

---

[1] Although plaintiff refers to the May, 2024, letter from his clinician that indicates such an arrangement would be beneficial, that letter was written months after defendant notified plaintiff of the non-renewal of his lease and therefore will not be considered.

-11-

a unit shared with other graduate students.  Either accommodation would have satisfied plaintiff's need as articulated by his clinician at the time of his request.  The motion to dismiss will therefore be allowed as to Count 2.

### 2. Counts 3.1 and 3.2

Counts 3.1 and 3.2 allege that defendant refused to renew plaintiff's lease based on his disability, in violation of the FHA and its state-law analogue. 42 U.S.C. §3604(f)(1),(2); M.G.L. c. 151B, §4.  To state a claim for discriminatory intent, as is alleged here, plaintiff must show through direct or indirect evidence that defendant's actions were motivated by plaintiff's disability. Pina v. Town of Plympton, 529 F. Supp. 2d 151, 155 (D. Mass. 2007).  In the absence of direct evidence, plaintiff must establish that 1) he is disabled, 2) he applied and was qualified for renewal, 3) his application was denied and 4) similarly situated individuals were treated more favorably. Schonton v. MPA Granada Highlands LLC, No. 16-CV-12151-DJC, 2020 WL 1062948, at *5 (D. Mass. Mar. 5, 2020).

Abdelrasoul has presented neither direct nor indirect evidence of discrimination based upon his disability.  Despite plaintiff's contention otherwise, BU's email denial of March 11, 2024, is not direct evidence of discrimination.  At most, and as discussed infra, that communication refers to plaintiff's accommodation request, not to his alleged disability, as a

-12-

factor of the nonrenewal. Further, the email indicates that plaintiff was otherwise unqualified for renewal based upon his previous violation of the lease agreement. Because he has not shown that he was eligible for renewal, the Court need not analyze whether similarly situated individuals were treated more favorably.

Abdelrasoul also claims that BU discriminated against him in the terms, conditions and privileges of the GRLA in violation of federal and state law. Plaintiff avers that granting defendant "sole discretion" over housing eligibility allows it to act illegally but the GRLA is neutral with respect to disability status and not discriminatory under the FHA. Defendant's motion to dismiss will be allowed with respect to Counts 3.1 and 3.2.

### iii. Count 4.1

Count 4.1 alleges that BU blocked Abdelrasoul's ability to renew his lease in retaliation for his accommodation request. The Court previously denied defendants' motion to dismiss this claim and has no reason to reconsider that conclusion. For the reasons explained in the previous Order (Docket No. 86), the motion to dismiss with respect to Count 4.1 will be denied.

### iv. Count 8

Count 8 alleges that BU intruded upon Abdelrasoul's right of privacy under M.G.L. c. 214, §1B, by 1) coercing him into

-13-

disclosing medical information and 2) entering the unit without knocking in July, 2024.  To sustain such a claim under §1B, plaintiff must show that an intrusion into his privacy was both unreasonable and substantial or serious. Ortiz v. Examworks, Inc., 470 Mass. 784, 793 (2015).

With respect to the disclosure of medical information, plaintiff's claim fails.  Upon receiving a request for a reasonable accommodation, a housing provider is entitled to seek information from an allegedly disabled person as to the existence of the disability and the reasonableness of the accommodation. Giardiello v. Marcus, Errico, Emmer & Brooks, P.C., 261 F. Supp. 3d 86, 96 (D. Mass. 2017).  Notwithstanding such entitlement, plaintiff voluntarily provided such information before being asked.  The claim therefore is unavailing.

Notwithstanding such failure, Abdelrasoul has stated a claim with respect to the unannounced entries of BU's agents.  A claim under M.G.L. c. 214, §1B, may be premised upon an invasion of one's seclusion or solicitude. Polay v. McMahon, 468 Mass. 379, 382, 10 N.E.3d 1122, 1126 (2014).  Plaintiff has alleged that defendant's agents repeatedly used a master key to enter his unit without knocking and without providing notice. Defendant retorts that such entries were consented to.  Even if Abdelrasoul permitted the eventual entry into his unit, however,

he did not consent to the agents repeatedly opening his door without notice or knocking. Such intrusions are arguably both unreasonable and substantial and therefore sufficient to state a claim under §1B.

BU also rejoins that the GRLA permitted entries without notice. That is not quite correct. The GRLA permitted entries "at any time, if possible with notice." The facts as alleged do not indicate that notice was impossible under the existing circumstances. BU also contends that Abdelrasoul had no expectation of privacy after the expiration of the GRLA. As concluded above, he was a tenant at will during the July, 2024, entries and therefore had a reasonable expectation of privacy in his residence. The motion to dismiss with respect to Count 8 will therefore be denied.

**ORDER**

Defendant's motion to dismiss (Docket No. 125) is:

1) with respect to Counts 2, 3.1 and 3.2, **ALLOWED**;

2) with respect to the claims of nuisance, trespass, invasion of privacy, constructive access to mail and conversion of mail in Count 1, **ALLOWED**, but

3) with respect to the claims of illegal eviction and breach of quiet enjoyment in Count 1, **DENIED**; and

4) with respect to Counts 4.1 and 8, **DENIED**.

**So ordered.**

_____
Nathaniel M. Gorton
Senior United States District Judge

Dated: May 21, 2026

-16-